UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
DANIEL RUSSO,

Plaintiff,

-against-

CONTINENTAL CASUALTY COMPANY, SHORT TERM
DISABILITY PLAN FOR EMPLOYEES OF ESTÉE
LAUDER, LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF ESTÉE LAUDER EMPLOYEES, BASIC
ACCIDENTAL DEATH AND DISMEMBERMENT PLAN
FOR EMPLOYEES OF ESTÉE LAUDER, and
VOLUNTARY ACCIDENTAL DEATH AND
DISMEMBERMENT PLAN FOR EMPLOYEES OF ESTÉE
LAUDER,

Defendants.
-----------------------------------------------------------------------X

Civil Action No.: 05 CV 5700
(HB) (AJP)

**STATEMENT OF**
**MATERIAL FACTS**
**PURSUANT TO**
**LOCAL RULE 56.1**

Pursuant to Local Rule 56.1 of the local rules governing the United States District Court for

the Southern District of New York, defendants Continental Casualty Company ("CNA"), Short Term

Disability Plan for Employees of Estée Lauder, Long Term Disability Plan for Employees of Estée

Lauder Employees, Basic Accidental Death and Dismemberment Plan for Employees of Estée

Lauder, and Voluntarily Accidental Death and Dismemberment Plan for Employees of Estée Lauder

(collectively "Estée Lauder Plans"), by and through their attorneys Sedgwick, Detert, Moran &

Arnold LLP, submit this statement of material facts as to which there are no genuine issues to be

tried.

  1.  Plaintiff, Daniel RUSSO ("RUSSO"), commenced employment with the Estée Lauder

Companies, Inc. in or about July 1997, and was employed as the manager of retail accounting

(Complt. ¶11; Exhibit "C" at RUSSO 0002350-251[1]).

---

[1] All references to Exhibits, unless otherwise designated, are made to Exhibits "A", "B" and "C" to the Affidavit of
Robert R. Troxell dated February 1, 2006.

2.     Russo 's job was a sendentary occupation that involved preparation of financial reporting (Exhibit "C" at RUSSO 000251).

3.     On January 9, 2003, RUSSO was terminated from his employment (Exhibit "C" at RUSSO 000118; RUSSO 000121; RUSSO 000129; RUSSO 000135; RUSSO 000137 and RUSSO 000250).

4.     Russo's employer, Estée Lauder, was and is the sponsor of an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.*, which was available for the benefit of its eligible employees and provided, amongst other things, long term disability benefits (the "Plan") (Complt. ¶5-10; *see generally* Exhibit "A" and "B").

5.     Only employees of Estée Lauder who are part of the defined eligible class under the Plan were entitled to receive benefits pursuant to the terms and conditions of the Plan. *See* Exhibit "A" at RUSSO 000009; Exhibit "B" at RUSSO 000036; RUSSO 000067-68.

6.     Pursuant to the group policy number SR-83101801 issued by CNA to Estée Lauder, Rider No. 1, the description of eligible employees entitled to coverage under the Estée Lauder Plans is defined as:

> All active, regular full time exempt and non-exempt employees including in-store employees.
>
> Active, regular full time means an employee who works at least 30 hours per week (25 hours per week for Whitman Division employees). Part time, temporary or seasonal employees are not eligible.

(Exhibit "A" to at RUSSO 00009).

7.     Pursuant to the group contract policy number SR-83101801 issued by CNA to Estée Lauder, an employee's coverage under the Estée Lauder Plans will terminate on . . . "(3) the date the

2

insured employee (a) is no longer a member of a class eligible for this insurance." (Exhibit "A" at RUSSO 00023).

8.     The Estée Lauder Plans' Summary Plan Description ("SPD") also states that an eligible employee's coverage under the STD, LTD, Basic Life Insurance, Voluntarily Life Insurance, Basic AD&D, Voluntary AD&D and BTA Plans will stay in effect until one of the following events takes place:

- Your employment with the company ends for any reason.

- You cease to be in an employee status eligible to participate in these plans.

.     .     .     .

STD, LTD and BTA coverage will stop immediately upon the date that any of the above events occurs.

(Exhibit "B" at RUSSO 000067-68).

9.     The Estée Lauder Plans are fully insured and administrated by CNA. (Exhibit "B" at RUSSO 000071).

10.    The Estée Lauder Plans conferred upon CNA "the sole discretionary authority to determine [plan participants'] eligibility for benefits and to interpret the terms and provisions of the policy." (Exhibit "B" at RUSSO 000047).

11.    The Estée Lauder Plans SPD states that Short Term Disability ("STD") benefits are payable for up to six months beginning on the first day of disability. (Exhibit "B" at RUSSO 00039).

12.    Pursuant to the Estée Lauder Plans' SPD, the definition of "Disability" for the purpose of "STD" benefit claims is as follows:

> *Disability* means you are not able to perform the substantial and material duties of your own occupation because of an illness or

3

injury. You must be under the care of a legally-qualified physician
other than yourself during the period of disability. Your physician
must certify that you are disabled, subject to the review and approval
of the insurance company.

(Exhibit B at RUSSO 00039).

13.    Pursuant to the Estée Lauder Plans' SPD

STD benefits are *not* payable if:

- You are not under the care of a licensed physician

- Your disability is not medically certified (on forms acceptable to
  the insurance company) and not approved by the short term
  disability insurance carrier

- You are able to perform the substantial and material duties of
  your own occupation or perform other work for pay or profit
  during any period of disability

(Exhibit at RUSSO 00041).

14.    Pursuant to the Estée Lauder Plans SPD, STD benefits are subject to eligibility and

approval of the insurance carrier (CNA) and must be applied for within 30 days of the participant's

claimed disability. (Exhibit B at RUSSO 00041).

15.    RUSSO never applied for STD benefits under the Estée Lauder Plans before filing his

claim for Long Term Disability ("LTD") benefits.

16.    The Estée Lauder Plan defines "Total Disability" for purposes of an LTD benefit

claim as follows:

"Total Disability" means that, during the Elimination Period [which
is 6 months[2]] and the Insured Employee Occupation Period shown in
statement 4 [which is 24 months[3]] of the Application, the Insured
Employee, because of Injury or sickness, is:

---

[2] The Elimination Period is defined by the Plan as being six months (Exhibit "A" RUSSO 00012) and is further
defined as the "number of days at the beginning of a continuous period of Disability for which no benefits are
payable" (Exhibit "A" RUSSO 00019).

[3] The Insured Employee Occupation Period is defined by the Plan as being 24 months (Exhibit "A" RUSSO 00011).

4

      1.      Continuously unable to perform the substantial and material duties of the Insured Employee's regular occupation;

      2.      under the care of a licensed physician other than the Insured Employee; and

      3.      not gainfully employed in any occupation for which the Insured Employee is or becomes qualified by education, training or experience.

(Exhibit "A" at RUSSO 00020; Exhibit "B" at RUSSO 00042).

17.      On or about June 2, 2003, RUSSO first filed a claim for long term disability benefits. (Complt. ¶30; Exhibit "C" at RUSSO 000250).

18.      The basis for plaintiff's claimed disability was stated by his physician as metastatic colon cancer on an attending physician's statement dated June 11, 2003. (Exhibit "C" at RUSSO 000253).

19.      According to a CNA Medical Assessment Tool completed by plaintiff's treating physician, Dr. Kemeny on July 8, 2003, the date of disability is listed as beginning on July 30, 2003, with no return to work estimated. (Exhibit "C" at RUSSO 000215-16; RUSSO 000231-32).

20.      In a letter dated July 29, 2003, CNA sent a letter to RUSSO requesting additional information concerning his claims. (Exhibit "C" at RUSSO 000109).

21.      On August 6, 2003, Dr. Steven Lincks, plaintiff's treating psychiatrist, prepared a functional assessment tool stating that Mr. RUSSO was unable to work due to major depressive disorder and panic disorder with agoraphobia. (Exhibit "C" at RUSSO 000158).

22.      By telefaxed correspondence dated September 12, 2003, Estée Lauder forwarded to CNA a copy of RUSSO's attendance records reflecting that RUSSO took two sick days off from work for the entire year prior to the date of his termination. (Exhibit "C" at RUSSO 000210-13).

23.      By letter dated September 12, 2003, CNA denied RUSSO's claim for long term disability benefits on the grounds that he was no longer a member of an eligible class to be covered

for such benefits following his last date of work on January 9, 2003. (Exhibit "C" at RUSSO 000129-130).

24.     By letter dated September 17, 2003, RUSSO appealed CNA's decision to deny his claim for long term disability benefits and included copies of several pay stubs, as well as letters from his treating physicians. (Exhibit "C" at RUSSO 000201-209).

25.     By letter dated September 23, 2003, RUSSO advised that he was seen by his treating psychiatrist, Dr. Lincks, on January 24, 2003. Russo included a letter from Dr. Lincks in which he discussed the circumstances of RUSSO's termination from employment and his diagnosis with major depressive disorder, single episode, without psychotic features, with anxiety. In that letter Dr. Lincks noted that at the time he saw RUSSO on January 24, 2003, RUSSO stated that "he had been working full time for Estée Lauder until January 9, 2003, when he was called in and told he was terminated." (Exhibit "C" at RUSSO 000154-155).

26.     By letter dated September 24, 2003, RUSSO forwarded a copy of a letter from Dr. Budman at North Shore University Hospital in which Dr. Budman states that RUSSO has been disabled since October 1, 2002. (Exhibit "C" at RUSSO 000152-153).

27.     On September 29, 2003, RUSSO wrote to CNA with additional medical records, including a letter from Dr. Jagust, his primary care physician, dated September 25, 2003, stating that RUSSO was disabled as of September 21, 2002, due to illness and work-related stress and a revised letter from Dr. Lynch, RUSSO's chiropractor, who states in a letter dated September 22, 2003, that Mr. RUSSO was disabled as a result of his orthopedic injuries sustained in October 1998 and January 2002 and noting that RUSSO was disabled in September 2002. (Exhibit "C" at RUSSO 000149-151).

28.     On October 6, 2003, RUSSO faxed a letter to CNA with a letter from Dr. Kemeny dated September 30, 2003, stating that RUSSO is unable to work and needs to be placed on permanent disability as of September 2002 as a consequence of his underlying cancer condition. Dr. Kemeny's letter does not reconcile her earlier statement that RUSSO's disability began in July 2003. (Exhibit "C" at RUSSO 000146-147).

29.     By telefax dated October 10, 2003, RUSSO forwarded to CNA the letter of Liz Younghaus, R.N., a registered nurse, who states that RUSSO was disabled as of June 2002 and that he should have filed for disability benefits sooner than he actually did. (Exhibit "C" at RUSSO 000144-145).

30.     By letter dated October 28, 2003, CNA advised RUSSO that it was in receipt of his appeal and that it had received letters from Dr. Lincks, Dr. Budman, Dr. Lynch, and Dr. Kemeny, as well as the letter from Liz Younghaus, R.N., but that the materials did not alter the previous claim decision that RUSSO was not eligible for benefits and that the matter would be forwarded to the appeals area for further review. (Exhibit "C" at RUSSO 000105 and 128).

31.     By letter dated November 5, 2003, CNA denied RUSSO's LTD benefit claim following review on appeal (Exhibit "C" at RUSSO 000120-122). RUSSO's ineligibility for coverage under the terms of the applicable employee benefit plan, was again referenced in the denial letter as the grounds for denial (Exhibit "C" at RUSSO 000121). CNA also noted that RUSSO's medical proof submitted after the initial denial did not correlate with the physicians' written occupational opinions regarding the time in question, nor did this material demonstrate that RUSSO satisfied the policy definition for total disability because the additional medical proof did not illustrate that RUSSO was continuously unable to perform the substantial and material duties of his occupation prior to the date of his termination. (Exhibit "C" at RUSSO 000121). RUSSO was also

7

NY/469658v1

noted to have continued to demonstrate functional capability by continuing to work full-time from September 2002 until the time that his employment terminated in January 2003. (Exhibit "C" at RUSSO 000121).

32.     By letter dated November 5, 2003, Cheryl Sauerhoff, the appeals team leader, wrote to RUSSO in response to a telephone inquiry advising that the original denial letter dated September 12, 2003, reflected that the denial decision was based on RUSSO's ineligibility for benefits. Ms. Sauerhoff also advised that prior to determining if one is disabled or not, eligibility criteria must first be met. (Exhibit "C" at RUSSO 000103).

33.     By letter dated November 10, 2003, RUSSO objected to the denial of benefits on appeal and requested further review. (Exhibit "C" Affidavit at RUSSO 000124-125).

34.     On June 20, 2005, RUSSO commenced the instant action against CNA and the Estée Lauder Plans (*see* Summons and Complaint, annexed at Exhibit "1" to Affidavit of M. Bernstein). RUSSO alleges that he was wrongfully denied both short term and long term disability benefits and seeks an order of the Court declaring and determining that he is entitled to the benefits beginning on or about February 13, 2003, pursuant to the terms of the underlying summary plan description.

Dated:   New York, New York
         January 31, 2006

Michael H. Bernstein (MB0579)
SEDGWICK, DETERT, MORAN & ARNOLD LLP
*Attorneys for Defendants*
CONTINENTAL CASUALTY COMPANY, SHORT TERM DISABILITY PLAN FOR EMPLOYEES OF ESTÉE LAUDER, LONG TERM DISABILITY PLAN FOR EMPLOYEES OF ESTÉE LAUDER EMPLOYEES, BASIC ACCIDENTAL DEATH AND DISMEMBERMENT PLAN FOR EMPLOYEES OF ESTÉE LAUDER, AND VOLUNTARY ACCIDENTAL DEATH AND DISMEMBERMENT PLAN FOR EMPLOYEES OF ESTÉE LAUDER
125 Broad Street, 39th Floor
New York, New York 10004
(212) 422-0202  telephone
(212) 422-0925  facsimile

8

TO:

Harry J. Binder, Esq.
BINDER & BINDER, P.C.
Attorneys for Plaintiff
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, New York  11779-7682
(631) 648-4700  telephone

9