UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DANIEL RUSSO,                                            :
                                                         :
                            Petitioner,            :
                                                         :    05 Civ. 5700 (HB)
        - against -                                     :
                                                         :    <u>OPINION & ORDER</u>
CONTINENTAL CASUALTY COMPANY, SHORT      :
TERM DISABILITY PLAN FOR EMPLOYEES OF     :
ESTÉE LAUDER, LONG TERM DISABILITY PLAN   :
FOR EMPLOYEES OF ESTÉE LAUDER, BASIC      :
ACCIDENTAL DEATH AND DISMEMBERMENT        :
PLAN FOR EMPLOYEES OF ESTÉE LAUDER, and   :
VOLUNTARY ACCIDENTAL DEATH AND            :
DISMEMBERMENT PLAN FOR EMPLOYEES OF       :
ESTÉE LAUDER,                                            :
                          Respondent.            :
                                                         :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

        On June 20, 2005, plaintiff, Daniel Russo, filed this action against above-named defendants, Continental Casualty Company ("CNA"), Short Term Disability Plan ("STD"), Long Term Disability Plan ("LTD"), Basic Accidental Death and Dismemberment Plan ("Basic AD&D"), and Voluntary Accidental Death and Dismemberment Plan ("Voluntary AD&D ") (collectively "Estée Lauder Plans"). In that complaint, plaintiff alleges that defendants wrongfully denied him disability benefits. Defendants move for summary judgment. For the reasons set forth below, the motion for summary judgment is GRANTED as to all defendants.

                                  **I.     BACKGROUND**

        Plaintiff, Daniel Russo, began employment with Estée Lauder Companies as the manager of retail accounting around July 1997. He was terminated from his job on January 9, 2003 but continued to receive paychecks until on or about February 13, 2003.[1] On approximately June 2, 2003, Continental Casualty Company ("CNA"), the administrator of the Plan, received a claim for long term disability benefits from the plaintiff. The plaintiff's basis for coverage was, *inter alia*, his underlying metastatic colon cancer.[2] By letter dated September 12, 2003, CNA denied

---

[1] It is disputed whether plaintiff's benefits continued until or even past that time.
[2] Plaintiff was diagnosed with Stage IV Colon Cancer in 1996. At that time, he was given six months to

plaintiff's claim for long term disability benefits having found that plaintiff was ineligible since his last day of work was January 9, 2003 and under the plan, you must be employed to participate. Plaintiff appealed CNA's denial by letter dated September 17, 2003. As requested, he submitted written opinions from his treating physicians in order to establish his date of disability as being October 2002, prior to his termination from Estée Lauder. In a letter to the plaintiff, the administrator wrote that plaintiff was not eligible to receive benefits under the plan as his medical documentation failed to establish he was totally disabled at the time he was terminated on January 9, 2003.

A. *Estée Lauder Disability Plans*

Estée Lauder is the sponsor of the employee welfare benefit plans – Short Term Disability Plan ("STD"), Long Term Disability Plan ("LTD"), Basic Accidental Death and Dismemberment Plan ("Basic AD&D"),[3] and Voluntary Accidental Death and Dismemberment Plan ("Voluntary AD&D ")[4] (collectively "Estée Lauder Plans") – at issue in this case. All plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and are fully insured and administered by defendant CNA. These plans confer upon CNA "the sole discretionary authority to determine [plan participants'] eligibility for benefits and to interpret the terms and provisions of the policy." Exhibit "B" to Troxell Affidavit ("Troxell Aff."), RUSSO 000047. Here, the plaintiff asserts claims for disability benefits under the LTD Plan and continuing coverage under the AD&D and Voluntary AD&D Plans.[5]

Pursuant to the terms of the LTD Plan, CNA, the claims administrator, first determines if the employee is eligible for coverage then ascertains whether the employee satisfies the "total disability" standard under the Plan. Eligible employees are defined as:

> All active, regular full time exempt and non-exempt employees including in-store employees.
>
> Active, regular full time means an employee who works at least 30 hours per week . . . Part time, temporary or seasonal employees are not eligible.

---

live. Since his initial diagnosis, he has undergone more than four surgeries to remove tumors on his colon, liver, and lungs.

[3] The AD&D Plan provided coverage to participants in the event that they die or suffer certain injuries in the case of an accident. Exh. "B" to Troxell Aff., RUSSO 000052.

[4] The voluntary AD&D Plan supplemented the AD&D Plan and allowed participants to purchase additional coverage. Id.

[5] The plaintiff, in his opposition to the motion for summary judgment, withdrew his claim for short term disability benefits.

Exh. "A" to Troxbell Aff., RUSSO 00009.

The LTD Plan defines "total disability" for purposes of a LTD benefit claim as the inability to do the following for six continuous months due to injury or sickness:

1. Continuously unable to perform the substantial and material duties of the employee's regular occupation,
2. Under the care of a licensed physician, and
3. Not gainfully employed in any occupation for which the employee is or becomes qualified by education, training or experience. Exh. "B" to Troxell Aff., RUSSO 000042.

## II. STANDARD OF REVIEW

Pursuant to Federal Rules of Civil Procedure 56, the movant on a motion for summary judgment must establish that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A disputed issue of material fact alone is insufficient to deny a motion for summary judgment, the disputed issue must be "material to the outcome of the litigation," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In ruling on a summary judgment motion, the Court resolves all ambiguities and draws all inferences against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (*per curiam*); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

The Supreme Court has held that a *de novo* standard applies to the denial of benefits challenged under ERISA "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In those instances, a district court must review a denial of benefits for abuse of discretion and the arbitrary and capricious standard of review applies. See, e.g., Id.; Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995).

It is undisputed that the Estée Lauder Plan commits discretionary authority to CNA with regard to determinations for long term disability benefits. Exh. "B" to Troxell Aff., RUSSO 000047 ("When making a benefit determination under the LTD policy, the insurance company [CNA] has the *sole discretionary authority* to determine your eligibility for benefits and to interpret the terms and provisions of the policy.") (emphasis added). Pursuant to Second Circuit law, this Court only may reverse if CNA's decision was arbitrary and capricious, in other words, "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan, 52 F.3d at 442 (internal quotation marks omitted).

Although the arbitrary and capricious standard is prevailing precedent in this Circuit in instances where discretionary authority is committed to a plan administrator, this Court takes note of the fact that the New York State Insurance Department has recently determined that the use of discretionary clauses violate New York State insurance law. STATE OF NEW YORK INSURANCE DEPARTMENT, DISCRETIONARY CLAUSES IN HEALTH INSURANCE POLICIES AND CONTRACTS INCLUDING DISABILITY INCOME INSURANCE, Circular Letter No. 8 (Mar. 27, 2006), *available at* http://www.ins.state.ny.us/c106_08.htm (stating that the use of discretionary clauses in insurance policies and contracts violate New York State Insurance Law and must be removed from existing policies and contracts within 30 days of the date of the letter). This change may cause courts in the future to revisit their use of the arbitrary and capricious standard of review. However, given the current state of the law in the Second Circuit, that standard is the standard I must apply in this case.

Plaintiff argues that CNA was operating under a conflict of interest, to wit, this Court must review the matter *de novo*. I disagree.

It is true that in some cases where it is shown that the plan administrator has a conflict of interest, a less deferential standard applies. The Second Circuit has stated that "a reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists, . . . but that the 'conflict affected the reasonableness of the Committee's decision.'" See Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1259 (2d Cir. 1996). Thus, if the court finds that the administrator's decision was influenced by the conflict of interest and the decision was unreasonable, given competing interpretations of the plan, the court will interpret the decision *de novo*. Id. at 1255-56.

Plaintiff's argument on this score is unpersuasive. This is not a situation where CNA has conflicting fiduciary duties to the plan sponsor, Estée Lauder, and the participants as plan beneficiaries. The decision makers at CNA are neither employees of Estée Lauder or concerned about the revenue stream of the company. Cf. Id. at 1255; Pagan, 52 F.3d at 442. And plaintiff has not presented another viable argument that demonstrates that a conflict of interest exists. Instead, plaintiff focuses on the manner by which CNA chose to investigate the claim and the fact that CNA pays for claim benefits from their revenue stream. Without any evidence to demonstrate that this purported conflict influenced the administrator's final decision, this claim must fail.

### III. DISCUSSION

At the outset, this Court can easily dispose of the motion for summary judgment with regard to one defendant – STD. In plaintiff's opposition motion, the plaintiff withdrew his claim for disability benefits under the STD Plan. Thus, the motion for summary judgment is granted as to this benefit plan. However, the summary judgment motions with respect to the three other defendants require more analysis.

*A. Plaintiff's Coverage Under the Plans*

As a threshold matter, this Court must ascertain whether the plaintiff was covered under the AD&D, Voluntary AD&D, and LTD Plans after he was terminated on January 9, 2003. Pursuant to the express terms of those Plans, coverage remains in effect until one of the following takes place:

- Your employment with the Company ends for any reason (BTA coverage will stop earlier if you become disabled while still employed)
- You cease to be in an employee status eligible to participate in these Plans
- In the case of the Voluntary Life and Voluntary AD&D Plans, you stop making the required contributions for coverage
- The Company suspends or cancels any or all of the Insurance contracts which provide the benefits under these Plans. Exh. "B" to Troxell Aff. RUSSO 000067-68.

The policy goes on to state that for employees that are disabled on the date their STD and/or LTD Plans terminate, payments will still be paid in accordance with provisions of those plans. Id.

Plaintiff asserts that although he was terminated in January, his coverage under these

Plans was extended until February 29, 2004 pursuant to the terms of a confidential settlement agreement. If this claim was substantiated, plaintiff would remain eligible for benefits under these Plans, and this date would encompass July 2003, the date of total disability as determined by CNA. However, it seems clear that at least for now, the arbitrary and capricious standard must apply and that my review is limited to the administrative record.[6] See, e.g., Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995) ("We [Second Circuit] follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record."). There is no evidence in the administrative record that supports plaintiff's claim that his benefits extended thru February 2004[7] and by the clear terms of the policy, coverage under all four Plans – LTD, STD, AD&D, and Voluntary AD&D – ends upon termination of his employment, in this case, January 9, 2003.

Further, even assuming that evidence exists demonstrating that plaintiff's coverage extended beyond January 2003, the plaintiff cannot show that CNA's denial of long-term disability benefits was arbitrary and capricious.

*B. Long-Term Disability Claim*

Plaintiff argues that CNA failed to conduct a full and fair review of his claim denial as required by ERISA. See 29 U.S.C. § 1133(2) (stating that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."); See also 29 C.F.R. § 2560.503-1(h)(1). Specifically, plaintiff alleges that since CNA did not provide copies of the insurance policy, medical credentials of personnel involved in reviewing the claim, and a copy of the initial denial letter dated November 5, 2003, he was denied a full and fair review. Plaintiff is not claiming that CNA relied on these documents in reaching their decision or that it purposefully withheld these documents from his review.

A plan administrator must provide a claimant with copies of all documents pertinent to the decision to deny the claim for benefits. See 29 C.F.R. § 2560.503-1(h)(2)(iii) ("A claimant

---

[6] Both parties submitted material to this Court not found in the administrative record but those materials were not considered.

[7] There are references in the record where plaintiff states that although he was terminated in January 2003, he was still enrolled in all of his health, life, and disability benefits but could not discuss the situation due to confidentiality reasons. Exh. "C" of Troxell Aff., RUSSO 000092. CNA requested that plaintiff have his employer provide a document verifying this fact. No such documentation appears in the record. Id.

shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."). Plaintiff requested a complete copy of his claim file in a letter dated January 21, 2004. Exh. "C" to Troxell Aff., RUSSO 000114. The administrative record indicates that in a letter dated January 29, 2004, a complete copy of the administrative record was sent to plaintiff in response to plaintiff's request. Id. at RUSSO 000113. Thus, this Court finds that all pertinent records were provided to the plaintiff and he was not denied a full and fair review.

To complete or perhaps enlarge the picture, it is worth noting that the initial denial letter was included in both the administrative record and the submission to this Court. Id. at RUSSO 000100. While a copy of the insurance policy was not part of that record, the relevant provisions of the insurance policy had been excerpted numerous times and those excerpts were in the record. Further, it is not far-fetched for CNA to have assumed that plaintiff, as an enrolled member, had a copy of the policy since each employee receives a copy of the policy upon enrollment in the Plan. With regard to the medical credentials of CNA personnel, they were not included in the documents forwarded to the plaintiff, that failure, however, in no way deprived the plaintiff of a fair and full review. Plaintiff has presented no evidence that CNA's medical reviewers were biased or unqualified.[8] Further, the CNA Appeals Board wrote to plaintiff on November 18, 2003 and opined that they reviewed medical information submitted by the plaintiff – without objection I might add, from the plaintiff. I am of the same mind.

Plaintiff contends that the denial of disability benefits is not supported by substantial evidence. Substantial evidence is evidence "that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance." Miller, 72 F.3d at1072 (internal citation and quotation marks omitted). Using this standard, this Court finds there was substantial evidence in the administrative record to deny plaintiff's claim for disability benefits.

Plaintiff argues that he was totally disabled since October 2002 and thus, qualified for LTD benefits under the Plan. Plaintiff submitted written opinions from his treating physicians to establish this fact. However, a review of the record shows that none of the doctors were able to establish a definitive date of disability. In fact, Dr. Kemery, plaintiff's oncologist, indicated two different dates, October 2002 and July 2003, as to when the plaintiff was totally disabled. See

---

[8] At least one Appeals Committee member, Robert Troxell, is a registered nurse.

Exh. "C" to Troxell Aff., RUSSO 000147 (stating in a letter dated September 30, 2003 that "Mr. Russo is unable to perform his work and needs to be placed on permanent disability as of September 2002."); Cf. Id. at RUSSO 000231 (stating in a facsimile transmission that date of disability was July 30, 2003).[9] And more importantly, his contention is belied by the fact that he was at work most every day until his termination. Attendance records submitted by plaintiff's employer, Estée Lauder, reveal that plaintiff worked full-time until he was terminated. Id. at RUSSO 000211 - 213. In fact, between August 28, 2002 and the date of plaintiff's termination, the record shows that only one day was taken as "sick" and the other taken as a "doctor appointment." Thus, CNA was hardly out of line to conclude as it did, "that [plaintiff's] overall functional capacity had [not] been rendered as total disabling during in [sic] the year 2002 or beyond and to your date of employment termination in January 2003." Id. at RUSSO 000121. "Total disability" is required pursuant to the express terms of the LTD plan.

Despite plaintiff's serious medical condition, based on the above, this Court cannot find that CNA's determination that plaintiff was not totally disabled prior to his January 2003 termination was arbitrary and capricious.

*C. AD&D and Voluntary AD&D Claims*

It is uncontested that plaintiff enrolled in the AD&D Plan and purchased Voluntary AD&D coverage to supplement his benefits under the AD&D Plan. Plaintiff claims that his coverage under both the AD&D and the Voluntary AD&D Plans were improperly cancelled as a result of CNA's improper denial of his claim for short and long term disability benefits. Complaint ¶¶ 64, 70. He did not provide any further argument with regard to these claims in his brief to this Court. Since this Court finds that there is no showing that CNA acted arbitrarily and capriciously in denying plaintiff's disability benefits, his cause of action against the AD&D and Voluntary AD&D Plans must fail.

---

[9] There are additional letters in the record written by plaintiff's treating physicians stating that plaintiff was disabled as of October 2002. See, e.g., Troxell Aff. Ex. "C" RUSSO 000153. However, because all of these letters were dated in September 2003, after plaintiff had filed for (and been denied) long-term disability payments, this Court gives them less weight.

8

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted as to all four defendants. The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**April \_\_11\_\_, 2006**

_____
U.S.D.J.